The Judges delivered their opinions.
JUDGE TUCKER
(after stating the case) proceeded as follows: Mr. Hay admitted that, after the decision of this Court in the case of Tabb v. Baird, 3 Call, 475, and Duval v. Bibb, Ibid. 362, he could not support the plaintiff’s title, under the deed of bargain and sale from Henry Fox, to maintain an ejectment for so much of the land in controversy as was found by the Jury to have been in possession of the defendant at the time that conveyance was made; but contended, that, if the verdict contained sufficient certaintjr to ascertain the bounds of White’s 350 acres, judgment ought to be rendered for the plaintiff, for the remaining 90 acres; or, if the verdict be too uncertain for that purpose, there ought to be a venire de novo. I am of that opinion ; for, if John Fox, the testator, was capable of devising this land, (of which hereafter,) Henry, his son, must be considered as taking under the devise, and not merely under the deed from his mother, which was intended to be, and was in fact, an appointment by her, under the power given by the will, and not a conveyance of any interest from herself, though both the considerations of natural love and affection, and of five shillings in money, are also mentioned therein. Whether Mrs. Fox the mother ever entered upon these lands confided to her care does not appear, and is not material to this part of the case. But the patent to White, and his actual and continued possession of the lands from the date thereof in 1792, either vested in him a rightful, or wrongful possession adverse to the title of John Fox, and of all claiming under him; *73 so far as that possession actually extended; but no further. For it would be a most mischievous construction, indeed, to suppose, that the entry of a disseisor upon one hundred acres of land, part of one thousand, or more, would prevent the owner from conveying away the residue, to any other person he might think proper. Here the Jur3' have found the lands in controversy 169 * (meaning, I presume, the lands comprehended within the lines of Fox’s patent) to contain 440 acres, and that White’s survey contains only 3SÓ acres; the amount, though not the precise bounds of the disseisin, or ouster, are therefore shewn by the jury: and they ought to have discriminated between the lines of White’s patent and that of Fox, which the surveyor, in his report, alleges, covers and includes the former; Fox’s deed to Clay not being impeachable for the surplus.
Mr. Taylor, for the appellee, cited the case of Goodright, Lessee of Balch, v. Rich, 7 T. R. 327, to shew that the plaintiff is not entitled to a verdict for those ninety acres, because he is bound to prove the defendant in possession of the whole of the premises which he seeks to recover. Without examining the doctrine laid down in that case, to which, as at present advised, I cannot subscribe, and to which the cases of Smith v. Mann, and Jesse v. Bacchus, cited in Buller’s Ni. Pri. 110, perhaps afford a proper answer; the reply of Mr. Hay, that the Jury have in this case expressly found the lease, entry and ouster in the declaration mentioned, is, in my opinion, sufficient to obviate the objection, were such an obligation as Mr. Taylor contends for admitted.
We come now to the question suggested by a member of the Court, whether a patent from the Commonwealth be equal to an actual seisin ; or, as I understood the question, whether a patent only confers a complete title to lauds derived from the Commonwealth ; without an actual entry into the same and corporeal possession thereof, or not.
That an entry is not always necessary to give seisin in deed, appears from the cases cited by Mr. Hargrave, Co. Litt. 29, a, note 3. (a) In England, letters patent under the great seal amount to a livery in law.(b) In this country, where grants of waste and unappropriated land only are generally made, as in the present case, I should suppose a grant of such lands from the Commonwealth, under the seal of the state, must be considered as tantamount, not 170 *only to a livery in law, but to a liver>’ in deed. For the lands, previous to the patentee’s location, must have been waste and unappropriated, or they could not have been granted. The patent conveys all right and title whatsoever out of the Commonwealth : there is nothing in our law which implies a forfeiture in case of non-entry; whatever might have been the construction when certain improvements were required to be made within three years; there is no ground to suppose the Commonwealth can ever gain a right to the lands, so granted, again, but by escheat for want of heirs, or by forfeiture for non-payment of taxes; the right of the patentee must then be supposed to be complete and absolute. The patent is the symbol of his possession, as well as of his title. And an3' person entering upon that possession must be a trespasser or a disseisor. If the King enters into lands without title, or seizes lands by a void and insufficient office, he is no disseisor, (because of his prerogative,) but the freehold remains in the former owner; but if the King, by letters patent, grant the lands into which he has so entered, or has so seized, without title, if the patentee enters, he is a disseisor, (c) If the King grant lands to one, and, before he enters, another person enters and keeps the possession until he dies, and dies seised; and the lands descend to the heir of the disseisor; yet may the patentee enter; for his entry is not taken away by the descent in this case, (d) Upon common law principles, then, I am of opinion that an actual entry into waste and unappropriated lands granted by the Commonwealth is not necessar3r, in order to complete the patentee’s title thereto; but that the same is, upon the delivery of the patent, absolute and complete for every purpose whatsoever, whether to maintain an action, or to transmit an inheritance, or to grant the same by deed, or by last will and testament.
Other reasons, I think, may be drawn from the nature and situation of the country ; constant usage from its first settlement; and some particulars in our laws.
All the lands in Virginia have been originally granted *as vacant lands.
Whatever might have been the policy at the first settlement of the colony, large and extensive grants were made soon after.
With the revolution, it became an object to raise a revenue from the sale of vacant lands, without requiring any actual settlement or cultivation. Millions of acres were disposed of to purchasers from all quarters upon those terms. It was impossible to calculate upon an increase of population commensurate with such extensive grants. All that the Commonwealth required of the patentee was the jjayment of his taxes upon the lands thus acquired. That done, the law had no other claim upon him. Why then must he make an actual entry? His patent was evidence of every thing that could be the object of such an entry. It was founded upon an actual survey; for making which he paid all the expense; this survey was founded upon an actual location, made, or supposed to be made, by himself or his agent. His land-warrant was his authority for so doing ; and his entry in the surveyor’s books; the subsequent survey made pursuant thereto; and, finally, his patent, were all so many evidences, in succession, of these facts. If the possession of a lessee for years, at common law, be construed as the possession of him that hath title to the freehold, (without entry, or receipt of rent,) so as to make a man tenant by curtesy of his wife’s estate,(e) surely *74 these acts done by the patentee or his agents, (though preparatory to a patent, instead of being subsequent thereto,) may, in favour of a purchaser for a valuable consideration, (and such every patentee from the Commonwealth is,) be construed as equivalent to an actual entry, into lands granted by the Commonwealth. How many thousand titles must be defeated, if, in order to transmit an inheritance in lands so granted, or to give validity to a devise thereof, or to any other conveyance, an actual entry and corporeal seisin must be proved in every case? It would be both a mischief, and an inconvenience, too great for the law to adopt, or to countenance.
*Again; by an express provision in our law, actual possession need not be proved to maintain a writ of right. If the law will admit a patent, as evidence of a complete title in the demandant, or his ancestor or predecessor, in the highest and most solemn contest concerning lands, will it reject such evidence in an action merely possessory. The object of the evidence in both cases must be to prove an hereditary right in the original patentee, absolutely perfect, so as to be capable of conveying or transmitting the inheritance. It would seem strange if we were to reject the evidence of this patent to John Fox, in this case, as insufficient to support the plaintiff’s title derived from his son, and devisee, and thirty years hence the same patent should be offered and admitted as evidence sufficient to maintain a writ of right for recovery of those lands, or others in the same predicament.
Nor do I conceive it necessary that Henry Fox should have made an actual entry upon the lands to enable him to convey to Mr. Clay. Wherever there is a devise of lands, the law casts the freehold upon the devisee before entry;(a) and, bjr the will, the possession of these lands was in Mrs. Fox, until she had made the appointment to her son pursuant to her husband’s will; that appointment being made, the law cast the possession, both under the will and under the deed of bargain and sale, (in which form the appointment was made,) instan ter, upon the son. His possession thus acquired enabled him to convey all the lands of which he was not actually disseised. An actual entry was not necessary to be made by either, to enable the plaintiff to maintain an ejectment, (b)
Upon the whole, I am of opinion that the plaintiff was entitled to recover all the lands comprehended within the lines of John Fox’s patent, of which his son and devisee was not actually disseised, by the abatement of William White, at the time that Henry Fox executed the conveyance to the plaintiff, which the Jury have found in their verdict; and therefore that there 173 ought to be a venire *facias de novo, to ascertain the boundaries of the lands not comprehended within the line of White’s patent for 350 acres; the plaintiff being entitled to the residue.
JUDGE ROANE.
In the case of Birch v. Alexander, (c) it was held that a seisin in the Commonwealth need not be found; that being the ultimate point beyond which a party in proving his title is not bound to go. Although this would seem to import that, in all the derivative stages, seisin must be found, yet undoubtedly the finding of an actual seisin, or corporeal investiture, may be supplied by finding other things deemed by the law of equal validity and notoriety. Thus, under the decision in Tabb v. Baird, (d) it would be sufficient to find that a defendant purchased by deed of bargain and sale, (which is considered as a statutory livery of seisin,) from a person having possession. So, as a fine is deemed an acknowledgment of a feoffment of record, and in which livery of seisin is not necessary to-be actually given, the supposition and acknowledgment thereof in a Court of Record, however fictitious, inducing equal notoriety, (e) the finding of an assurance of that kind would be equally effectual, were it not obsolete in this country. In like manner it is held, . that letters patent, under the great seal, amount to a livery in law.(f) In all these cases an actual corporeal tradition is dispensed with by the law, on the ground that acts of equal notoriety with it ought to have an equal and similar effect. The reason of this holds very strongly in relation to grants of land in a new country, where the proof of actual possession would be very difficult, and where, in some sense, a corporeal investiture of the land has been already taken by the entry and survey which preceded the grant, and may be said to be admitted and sanctioned thereby. In the case before us, the seisin thus acquired by the original patentee was deduced to the present appellant by the deeds of bargain and sale stated in the verdict, as to all that part of the tract in question, of which the appellees were not in possession un174 der * William White’s fatent, and he is entitled to recover that residue. But, inasmuch as the verdict is defective in not particularly locating in the plot White’s patent, and, consequently, does not shew where that surplus lies, the verdict ought to be supplied in this particular, and therefore a venire de novo ought to be avrarded.
JUDGE FLEMING.
It appears by a survey and plot made under an order of the District Court of Franklin, that Fox’s patent, under which the appellant claims, contains (instead of 342) 440 acres; and it is found by the verdict, that White’s patent, containing 350 acres, is included therein: but no discrimination as to the part of the plot in which the said 350 acres lie; so as to ascertain the boundaries of White’s patent. Therefore, for the uncertainty, I concur in opinion that the judgment be reversed, the cause remanded to the Superior County Court of Franklin; and that a venire de novo be awarded.
It is to be understood as the unanimous opinion of the Court, that a patent from the Commonwealth for waste and unappro *75 priated lands gives to the grantee a sufficient seisin to enable him to alien, without having ever been in actual possession of the premises, by a personal entry thereon.
The following was entered as the opinion of the Court: “The Court, having maturely considered, &c. is of opinion that the special verdict is uncertain and insufficient in this; that it appears by the survey, made in this cause and referred to in the said verdict, that the boundaries of the lands claimed by the lessor of the appellant under Fox’s patent, contain 440 acres, within which the lands designed in the grant to the appellee White, containing 350 acres only, are found by the Jury to lie, without discriminating the metes and bounds of the lands contained in the last mentioned patent, whereby 17S the boundaries of the residue *of the said 440 acres to which the lessor of the appellant is entitled may be ascertained; and that the said judgment is erroneous.” The same was therefore reversed and annulled, and a venire facias de novo awarded.

 Co. Litt. 15, a, 3 Atk. 471, 3 Wilson, 516, Newman v. Newman.

 5 Co. 94, Barwicke's case.

 Bro. Abr. tit. ‘Disseisin’ 65; 4 Bac. Abr. ‘Prerogative,’ ad finem. p. 214, old edit.

 Co. Litt. 240, b.

 Vide Harg. Co. Litt. 29, a. note 3.

 Co. Litt. 111, a.

 Co. Litt. 240, b. Bull. Ni. Pri. 103; 3 Burr. 1897, Dough 468.

 1 Wash. 39.

 3 Call, 475.

 2 Bl. Com. 348.

 5 Co. 94, Barwicke’s case.